UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JESSICA P.,

                            Plaintiff,                    24 Civ. 4834 (AEK)

              -against-                          **DECISION AND ORDER**

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                            Defendant.

-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

Plaintiff Jessica P. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the final decision of the Commissioner of Social Security ("Commissioner"), which

denied her application for disability insurance benefits ("DIB").  ECF No. 1.  Currently before

the Court is Plaintiff's motion seeking to reverse the Commissioner's decision and have the case

remanded for further administrative proceedings.  ECF Nos. 13-14.  For the reasons that follow,

Plaintiff's motion is DENIED.

## BACKGROUND

### I.    Procedural Background

On April 20, 2015, Plaintiff filed an application for DIB, alleging November 14, 2014 as

the onset date of her disability.  AR 102.[2]  Plaintiff's application was initially denied by the

Social Security Administration ("SSA"), but was subsequently reopened and set for a hearing

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 9.

[2] Citations to "AR" refer to the certified copy of the administrative record filed by the
Commissioner.  ECF No. 10.

before an administrative law judge ("ALJ"), which was held on June 6, 2018.  *See id.*  ALJ John Barry issued a decision on August 1, 2018, finding that Plaintiff had been disabled within the meaning of the Social Security Act (the "Act") since November 21, 2014.  AR 102-06.  As part of the decision, however, ALJ Barry noted that "[m]edical improvement [was] expected with appropriate treatment," and recommended that a "continuing disability review" ("CDR") be conducted in 18 months.  AR 106.

The SSA initiated a CDR in August 2021, three years after ALJ Barry's decision.  AR 333-48.  Upon conclusion of the initial CDR, on January 3, 2022, the SSA issued an explanation finding that Plaintiff's disability had ceased as of January 4, 2022.  AR 107-26.  The agency sent a notice dated January 4, 2022 to Plaintiff informing her of the determination.  AR 143-48. Plaintiff made a request for reconsideration of the disability cessation determination on January 19, 2022.  AR 149-50.  A telephonic hearing was held before disability officer Robert S. Gordon on January 25, 2023; Plaintiff was represented at the hearing by Tara Johnson, Esq., and presented evidence.  AR 192-203.  On February 28, 2023, Mr. Gordon issued a decision affirming the original determination that Plaintiff was no longer disabled as of January 4, 2022. AR 204-14.  The SSA informed Plaintiff of the decision by notice dated March 2, 2023.  AR 219-20.  On March 10, 2023, Plaintiff made a request for a hearing before an ALJ to challenge the February 28, 2023 decision.  AR 221-23.  On July 27, 2023, Plaintiff appeared by telephone, represented by counsel, at a hearing before ALJ Kieran McCormack, but because it was determined that certain medical records were missing from the record, the hearing was truncated and postponed to a later date.  AR 78-87.  A subsequent hearing was held before ALJ McCormack on October 24, 2023.  AR 45-77.  ALJ McCormack issued a decision on November 9, 2023, finding that Plaintiff's disability had ended on January 1, 2022.  AR 14-40.  On

November 22, 2023, Plaintiff requested review of ALJ McCormack's decision by the SSA's Appeals Council, AR 310-12; the Appeals Council denied Plaintiff's request on April 25, 2024, AR 1-6.  Accordingly, ALJ McCormack's decision became the final decision of the Commissioner.  The instant lawsuit, seeking judicial review of ALJ McCormack's decision, was filed on June 25, 2024.  ECF No. 1.

## II.    Testimonial, Medical, and Vocational Evidence

Plaintiff has provided a summary of the testimonial, medical, and vocational evidence contained in the administrative record.  *See* ECF No. 14 ("Pl.'s Mem.") at 2-20.  The Commissioner has adopted Plaintiff's summary of the evidence, and has added a detailed summary of ALJ McCormack's decision and citations to record evidence supporting his findings.  *See* ECF No. 16 ("Def.'s Mem.") at 1-8.  Based on an independent and thorough examination of the record, the Court finds that these summaries of the evidence are largely comprehensive and accurate.  Accordingly, the Court adopts the factual background as set forth by the parties, and discusses the evidence in the record in more detail to the extent necessary to determine the issues raised in this case.  *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

## I.    Standard of Review

The scope of review in an appeal from a Social Security determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when deciding that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the correct legal

standards is grounds for reversal.'"  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 106 (quotation marks omitted).  The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted).  To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (quotation marks omitted).  "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (quotation marks omitted) (emphasis in original).  "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'"  *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

## II.    Medical Improvement and the Eight-Step Sequential Analysis

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work

4

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

Where, as here, an individual has been found disabled, the SSA must conduct periodic CDRs to ensure that the individual remains entitled to the benefits he or she is receiving. *See* 42 U.S.C. § 421(i); 20 C.F.R. § 404.1589. The Commissioner may find that the individual is no longer disabled at a later date "where substantial evidence of 'medical improvement' supports the conclusion that the claimant has become able to work." *Ritchie v. Saul*, No. 19-cv-1378 (DF), 2020 WL 5819552, at *11 (S.D.N.Y. Sept. 29, 2020) (citing 42 U.S.C. § 423(f)(1)). SSA regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he or she was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). To determine whether a claimant's medical condition has improved, the Commissioner "must compare 'the current medical severity of the impairment to the medical severity of that impairment at the time' of the most recent favorable medical decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (quoting 20 C.F.R. § 404.1594(b)(7)) (cleaned up). "[T]he relevant inquiry is whether [the claimant's] condition improved from the date of the most recent decision in his [or her] favor (the comparison point)." *Fleming v. Sullivan*, 806 F. Supp. 13, 15 (E.D.N.Y. 1992). "Generally, the medical improvement standard under 20 C.F.R. § 404.1594 applies to continuing disability reviews regarding a prior adjudication." *Cook v. Colvin*, No. 13-cv-1946 (TPG), 2015 WL 5155720, at *9 (S.D.N.Y. Sept. 2, 2015). According to that regulation, "[a] determination that there has been a decrease in medical severity must be based

on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

In cases involving the consideration of whether an individual has experienced a medical improvement such that he or she no longer qualifies for disability benefits, the ALJ must follow the eight-step sequential analysis set forth at 20 C.F.R. §§ 404.1594(f)(1)-(8) to determine whether or not the individual continues to be disabled.

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, then at step two, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1594(f)(2). If the claimant does not have such an impairment or combination of impairments, then the ALJ must determine at step three whether there has been any medical improvement, as that term is defined in 20 C.F.R. § 404.1594(b)(1). 20 C.F.R. § 404.1594(f)(3). If medical improvement has occurred, the analysis proceeds to step four. *Id.* At step four, the ALJ must determine whether the claimant's medical improvement is related to the claimant's ability to do work, *i.e.*, whether there has been an "increase in the residual functional capacity ['RFC']" based on the impairments that were present at the time of the most recent favorable medical determination. 20 C.F.R. § 404.1594(f)(4). If the ALJ finds that the medical improvement is related to the to the claimant's ability to do work, then the ALJ skips step five and proceeds to step six. *Id.*[3] At step six, the ALJ must determine whether all the claimant's

---

[3] The Court has omitted reference to step five of the analysis because it is not relevant to the adjudication of this matter. As detailed below, ALJ McCormack's determinations led him to proceed from step four to step six in his evaluation of Plaintiff's case, and Plaintiff has not challenged that aspect of the ALJ's decision.

current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If the impairments are severe, then at step seven, the ALJ must assess the claimant's RFC based on all of his or her current impairments and determine if the claimant can still perform his or her past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, then the ALJ will find that the claimant's disability has ended. *Id.* Finally, if the claimant cannot perform his or her past relevant work, then the ALJ must decide at step eight whether the claimant can do other work given his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work, then the ALJ will find that the disability has ended. *Id.*

For purposes of a CDR, the burden is with the Commissioner to prove that the claimant is no longer disabled. "Once a claimant establishes the existence of a disabling condition, the medical improvement standard shifts the burden of proof to the Commissioner; a claimant is entitled to a presumption that the classification will not change unless the condition, governing statutes, or regulations change." *Milliken v. Saul*, No. 19-cv-9371 (PED), 2021 WL 1030606, at *11 (S.D.N.Y. Mar. 17, 2021) (quotation marks omitted). "Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled." *Id.* (cleaned up). "[W]here the Commissioner fails to meet his [or her] burden of proof, the presumption that a claimant is disabled will stand. Moreover, a finding of medical improvement must be supported by substantial evidence." *Id.* (internal citation omitted). Stated differently, "even though the burden rests with the Commissioner, a claimant's benefits may be terminated so long as there is substantial evidence demonstrating a medical improvement which enables the individual to engage in substantial gainful activity." *Susan A. v. Saul*, No. 18-cv-0887 (TWD), 2019 WL 6310730, at *2 (N.D.N.Y. Nov. 25, 2019) (quotation marks omitted).

## DISCUSSION

Plaintiff contends that the Commissioner's decision should be reversed and the case remanded for further administrative proceedings for four reasons:  (1) she has remained unable to meet the requirements for sedentary work from after January 1, 2022 through the present, Pl.'s Mem. at 21-23; (2) the jobs of assembly inspector and polisher—two of the jobs cited by the vocational expert at the November 2023 hearing before ALJ McCormack—are not available in significant numbers in the national economy, *id.* at 23-24; (3) the job of document preparer—another job cited by the vocational expert—has been determined to be obsolete, *id.* at 24-25; and (4) she remains disabled through the present day, *id.* at 25-26.  The Commissioner maintains that the ALJ's decision should be affirmed, since it is supported by substantial evidence and free of legal error.  Def.'s Mem. at 1.

For the reasons set forth below, the Court finds that there was no legal error in ALJ McCormack's November 9, 2023 decision, and the decision was supported by substantial evidence.  Therefore, Plaintiff's motion is denied.

## I.    ALJ Barry's August 1, 2018 Decision

On August 1, 2018, ALJ Barry issued a decision finding that Plaintiff had been disabled since November 21, 2014.  AR 105.  The ALJ found that Plaintiff had the following impairments:  status-post left hip labral surgical repair on June 19, 2015; migraine headaches; endometriosis; and interstitial cystitis.  AR 103.  After reviewing the medical evidence in the record, ALJ Barry determined that the severity of these impairments satisfied "the criteria of section 1.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 404.1525)."  *Id.*  As previously noted, the ALJ also stated that "[m]edical improvement is

expected with appropriate treatment," and recommended that a CDR be conducted in 18 months (*i.e.*, in or around February 2020).  AR 106.

## II.    ALJ McCormack's November 9, 2023 Decision

ALJ McCormack noted at the outset of his decision that the most recent favorable decision finding that Plaintiff was disabled was ALJ Barry's August 1, 2018 decision.[4]  AR 19. He then applied the eight-step sequential analysis described above, reviewed the record evidence, and issued a decision finding that Plaintiff's disability had ceased on January 1, 2022, and that Plaintiff had not become disabled again since that date.  AR 19-40.

At step one, ALJ McCormack found that Plaintiff had not engaged in substantial gainful activity through the date of the decision.  AR 19.

At step two, the ALJ determined that the medical evidence showed that since January 1, 2022, Plaintiff had the following medically determinable impairments:  a history of a left hip labral tear, anterosuperior labral tear with preservation of the articular cartilage of the right hip, and disc protrusion of the lumbar spine.  *Id.*  ALJ McCormack found that since January 1, 2022, Plaintiff had not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* In arriving at this determination, ALJ McCormack considered Listing 1.15, which addresses "disorders of the skeletal spine resulting in compromise of a nerve root(s)," and Listing 1.18, which addresses "an abnormality of a major joint(s) in any extremity."  AR 19-20.  The ALJ found that the evidence did not show that Plaintiff had a "medical need for a walker, bilateral canes, bilateral crutches or a wheeled and seated mobility device involving the use of both hands

---

[4] ALJ McCormack referred to the August 1, 2018 decision as the "comparison point decision" or "CPD."  AR 19.  The Court uses that abbreviation herein as well.

or inability to use one or both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements." AR 21. He therefore found that Plaintiff's impairments did not meet or medically equal either of these listings. *Id.* The ALJ also considered the four broad functional areas set out in the regulations for evaluating mental disorders, known as the "paragraph B" criteria, and determined that Plaintiff did not have a severe mental impairment or combination of mental impairments. AR 21-22. The ALJ found that Plaintiff had "mild limitation" as to the first three functional areas—(1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace. AR 21. The ALJ found that Plaintiff had "no limitation" with respect to the fourth functional area of adapting or managing oneself. AR 22.

At step three, the ALJ found that medical improvement had occurred as of January 1, 2022. *Id.* ALJ McCormack explained that the evidence showed that the medical severity of Plaintiff's impairments had decreased by January 1, 2022. *Id.* She had a normal gait, and her complaints of pain were being treated conservatively and with Advil as needed. *Id.* The ALJ also noted that Plaintiff had not required surgery or emergency room visits during the period at issue, and that medical examinations in 2021, 2022, and 2023 had no abnormal findings. *Id.*

At step four, ALJ McCormack concluded that Plaintiff's medical improvement was related to her ability to work because by January 1, 2022, Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the same listing that was met at the time of the CPD, namely, Listing 1.02(A). *Id.* He noted that the evidence did not show that Plaintiff was unable to ambulate effectively during the period at issue, as is required to have impairments that met or medically equal this Listing; rather, she had a normal gait and did not use an assistive device at consultative examinations in December 2021 and August 2022. AR

22-23.  Because the ALJ found that there had been medical improvement related to Plaintiff's ability to work, there was no need to address step five, and he moved on to step six.

At step six, the ALJ found that since January 1, 2022, Plaintiff continued to have a severe impairment or combination of impairments—specifically, history of a left hip labral tear treated with surgical repair, small anterosuperior labral tear with preservation of the articular cartilage of the right hip, and disc protrusion of the lumbar spine—which caused more than minimal limitation in Plaintiff's ability to perform basic work activities.  AR 23.  After reviewing the medical evidence, however, ALJ McCormack found that Plaintiff did not have severe impairments related to Lyme disease or mold exposure; migraine headaches; dysmenorrhea and endometriosis; high blood pressure; interstitial cystitis (which had been found to be a severe impairment at the time of the CPD); heart murmur; rheumatoid arthritis; or right knee pain.  AR 23-25.

At step seven, the ALJ first considered Plaintiff's RFC and found that since January 1, 2022, she had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[5] except

_____

[5] As defined in the Social Security regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

that she could climb, balance, stoop, kneel, crouch, and crawl on an occasional basis.[6]  AR 25.

In determining Plaintiff's RFC, ALJ McCormack evaluated Plaintiff's symptoms by applying the

two-step framework described in 20 C.F.R. § 404.1529, and eventually concluded that Plaintiff's

"medically determinable impairments could have reasonably been expected to produce the

alleged symptoms; however, the intensity, persistence and limiting effects of [Plaintiff's]

symptoms are not shown by the objective medical and other evidence to be of a disabling

nature . . . ."  AR 27.  The ALJ provided a detailed summary of the evidence in the record,

including Plaintiff's statements, both to her healthcare providers and at the hearing, about her

symptoms and activities of daily living, as well as her medical treatment records.  AR 25-27.

Overall, ALJ McCormack found that the evidence in the record demonstrated that

Plaintiff had some limitations, "but not to the extent that it would prevent all work."  AR 28.  In

particular, the ALJ noted that Plaintiff had neither been treated with surgery nor been to the

emergency room during the period at issue.  *Id.*  He found that Plaintiff's testimony about her

level of pain was not fully consistent with her statements to medical sources in the record.  *Id.*

Moreover, her pain had been treated conservatively, including use of over-the-counter pain

medication.  *Id.*  The medical findings in the record mainly showed that Plaintiff had a normal

gait and somewhat limited range of motion of the spine and hips.  *Id.*  There was no evidence

that Plaintiff complained of shortness of breath, as she alleged, due to mold exposure.  *Id.*

---

[6] Steps seven and eight of the sequential evaluation for an ALJ's medical improvement
determination correspond to steps four and five of the sequential evaluation for an ALJ's
disability determination.  In the context of a disability determination, step four is when the
Commissioner determines whether, in light of the claimant's RFC, he or she can perform his or
her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e)-(f).  If the Commissioner finds
that the claimant cannot perform his or her past relevant work, then at step five, the
Commissioner considers whether, in light of the claimant's RFC, age, education, and work
experience, he or she can make an adjustment to other work.  *See* 20 C.F.R. §§
404.1520(a)(4)(v), (g).

ALJ McCormack also considered the opinion evidence regarding Plaintiff's physical and mental impairments in accordance with the requirements of 20 C.F.R. § 404.1527.  AR 28-31. After discussing all of the opinions in the record, the ALJ noted that his RFC assessment was supported in particular by the "persuasive opinions" of consultative physician Dr. Kautilya Puri, rendered on December 8, 2021 and August 17, 2022, and of state agency medical consultant Dr. M. Angelotti, rendered on December 17, 2021.  AR 31.[7]

After determining that Plaintiff had the RFC for sedentary work, the ALJ found that since January 1, 2022, Plaintiff was capable of performing her past relevant work as an eligibility worker and a case worker by comparing Plaintiff's RFC with the Dictionary of Occupational

---

[7] The ALJ also found "persuasive" the opinions of two consultative psychiatric examiners, Sara Long, Ph.D. and Alison Murphy, Ph.D., both of whom found no evidence of any limitations with respect to certain categories of mental functioning, and no more than mild limitations with respect to the remaining categories of mental functioning.  *See* AR 29.  ALJ McCormack factored each of these opinions "into the finding that [Plaintiff's] generalized anxiety disorder is not a 'severe' impairment."  *Id.*

Titles ("DOT") and the vocational expert's testimony.  AR 32.[8]  This conclusion was sufficient

for the ALJ to find that Plaintiff was no longer disabled within the meaning of the Act as of

January 1, 2022.[9]

Even though the ALJ found that Plaintiff was capable of performing her past relevant

work at step seven, he nevertheless proceeded to step eight to make an "alternative finding[]"

and determined that there were other jobs existing in the national economy that Plaintiff was able

to perform.  *Id.*  The vocational expert testified that an individual with Plaintiff's age, education,

work experience, and RFC would be able to perform the jobs of document preparer, assembly

inspector, and polisher.  AR 33.  Based on the vocational expert's testimony, the ALJ concluded

that Plaintiff could make a successful adjustment to work that existed in significant numbers in

---

[8] That the ALJ found Plaintiff was able to perform her past relevant work as a case worker only "as it is generally performed in the national economy per the [DOT]," and not as Plaintiff had actually performed it, *see* AR 32, does not undercut the finding that she was able to perform her past relevant work.  *See, e.g.*, *Nobile v. Comm'r of Soc. Sec.*, No. 16-cv-0871 (DJS), 2017 WL 3054846, at *5 (N.D.N.Y. July 19, 2017) ("A supported finding that a claimant can perform past relevant work as generally performed is sufficient to allow for an unfavorable determination at Step Four [of a disability determination] even if the claimant is not able to perform that same work as [he or] she actually performed it in the past."); *Grogg v. Comm'r of Soc. Sec.*, No. 11-cv-1381 (NAM) (TWD), 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014) ("Because the ALJ's finding that Plaintiff could perform this past relevant work as a parking lot attendant as generally performed is sufficient to negate a finding of disability at step four [of a disability determination], it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work as actually performed.").

In any event, here, even if the ALJ erred in finding that Plaintiff could perform her past relevant work as a case worker, such error would be harmless, because the ALJ found that she could perform her past relevant work as an eligibility worker both as it is generally performed in the national economy per the DOT and as she had actually performed it.  AR 32; *see Grisel A. v. Kijakazi*, No. 20-cv-719 (TOF), 2021 WL 4350565, at *12 n.6 (D. Conn. Sept. 24, 2021) ("So long as a claimant can perform at least one job included in [his or] her past relevant work, an ALJ's erroneous finding that [he or] she can perform others is harmless.") (citing *Cichocki v. Astrue*, 534 F. App'x 71, 77 n.1 (2d Cir. 2013) (summary order)).

the national economy and that a finding of "not disabled" also would be appropriate under this analysis.  AR 33-34.

For all of these reasons, at the conclusion of the sequential analysis, ALJ McCormack determined that Plaintiff's disability ended on January 1, 2022, and she had not become disabled again since that date.  AR 34.

## III.    Analysis

### A.    Substantial Evidence Supports the ALJ's Determination that Plaintiff Is No Longer Disabled and Is Capable of Performing Sedentary Work

Plaintiff argues in the first and fourth points of her moving brief that she has been unable to meet the requirements for sedentary work since January 1, 2022, and that she has remained disabled through the present.  *See* Pl.'s Mem. at 21-23; 25-26.  In doing so, however, Plaintiff has not identified any legal error in ALJ McCormack's decision, nor does she argue that the ALJ failed to apply the proper legal standard in evaluating any of the evidence.  Instead, Plaintiff discusses certain pieces of medical evidence and opinion evidence in the record that she believes

---

[9] As Plaintiff points out in her moving brief, the SSA has issued a new ruling, SSR 24-2p, pursuant to which the lookback period for past relevant work has been reduced to five years. Pl.'s Mem. at 2 n.2; *see* SSR 24-2p, *Titles II and XVI:  How We Evaluate Past Relevant Work*, 89 Fed. Reg. 48479, 48480 (June 6, 2024).  This ruling is in conformity with a change in SSA regulations, effective on June 22, 2024, which modified the lookback period for past relevant work to five years.  *See* 20 C.F.R. § 404.1560(b)(1).  SSR 24-2p states that it (like the regulation) will be applied starting on June 22, 2024 and that it will apply to new claims filed on or after that date or to claims pending at the agency on and after that date.  *See id.* at n.1.  The ruling adds that the SSA "expect[s] that Federal courts will review [the agency's] final decisions using the rules that were in effect at the time [the SSA] issued the decisions."  *Id.*  Accordingly, where, as here, the ALJ issued his decision on November 9, 2023, SSR 24-2p does not apply (and Plaintiff does not argue to the contrary).  *See also*, *e.g.*, *Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, at *3-4 (11th Cir. Apr. 1, 2025) (*per curiam*) (denying retroactive application of SSR 24-2p and explaining that "where an SSR explicitly states an effective date, this points against retroactive application."); *Shilts v. Comm'r of Soc. Sec.*, No. 24-cv-368 (JD), 2025 WL 2013577, at *3-4 (N.D. Ind. July 17, 2025) (holding that SSR 24-2p does not apply retroactively).

support a finding of continued disability.  *See id.*; *see also* ECF No. 17 ("Reply Mem.") at 4-5.

While Plaintiff summarily states that "an ALJ commits legal error when he sets forth an RFC

that fails to take all of the medical evidence into account," Reply Mem. at 3, this amounts to no

more than a disagreement with how ALJ McCormack weighed the evidence in the record.  Even

with respect to the opinion evidence, Plaintiff does no more than highlight the opinions in the

record that she contends do not support the ALJ's RFC finding.  *See id.* at 4-5.  As previously

noted, it is well settled that "[t]he substantial evidence standard is a very deferential standard of

review . . . ."  *Schillo*, 31 F.4th at 74 (quotation marks omitted).  "If evidence is susceptible to

more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Id.*

(quotation marks omitted).  To the extent that Plaintiff disagrees with how the ALJ weighed the

evidence, "the deferential standard of review prevents [the Court] from reweighing it."  *Krull v.

Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order).

 Here, the decision itself demonstrates that ALJ McCormack conducted a thorough review

of the medical, testimonial, and opinion evidence.  AR 19-34.  After considering the full record,

the ALJ found that Plaintiff's impairments necessitated a restrictive RFC for sedentary work,

with the exception that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and

crawl.  AR 25.  Plaintiff maintains that the evidence she identifies demonstrates that she remains

disabled and that the ALJ erred in making his determination.  But while the evidence Plaintiff

points to may, in isolation, tend to support her preferred result, she ignores all of the other

evidence that the ALJ relied upon in reaching his conclusions.

 For example, Plaintiff cites various medical records highlighting her reports of pain.  *See*

Pl.'s Mem. at 21-23.  But the ALJ specifically discussed Plaintiff's statements about her pain

level throughout his decision, *see* AR 22-28, and he found that her testimony at the hearing

regarding her level of pain was not fully consistent with her prior statements to medical sources. AR 28.  He also noted that her pain had been treated conservatively, with only over-the-counter medication.  *Id.*; *see*, *e.g.*, AR 535 (Mar. 2021), 597 (Dec. 2021), 775 (Aug. 2022).  The ALJ also appropriately considered medical treatment records where Plaintiff reported to healthcare providers that she was able to exercise regularly, including riding a Peloton exercise bike, doing yoga, lifting weights, doing barre workouts, and walking.  AR 26; *see also*, *e.g.*, AR 944 (Sept. 2022), 995 (Dec. 2022), 1037 (Apr. 2023).  Other records show that she had a normal gait and balance, and that she stated at multiple healthcare provider visits that she had no musculoskeletal symptoms.  AR 26-27; *see also*, *e.g.*, AR 483, 485 (Sept. 2020), 536 (Mar. 2021), 904-06 (Jan. 2022), 1094 (May 2023), 1149 (Oct. 2023).  At yet other healthcare provider visits, in addition to having a normal gait and reporting no musculoskeletal symptoms, Plaintiff reported no health-related complaints at all.  *See* AR 499, 501 (Apr. 2021), 944-46 (Sept. 2022).  There was therefore substantial evidence to support the ALJ's conclusion that Plaintiff's pain did not preclude her from being able to perform sedentary work.

Plaintiff also cites records that include her reports and diagnosis of anxiety, *see* Pl.'s Mem. at 21-23, but the ALJ also specifically discussed evidence relating to Plaintiff's anxiety at multiple points throughout his decision.  *See* AR 21-23, 27, 29.  After considering the evidence in the record, the ALJ found that Plaintiff had a mild limitation in her ability to interact with others due to anxiety, but noted that Plaintiff had declined to take daily anxiety medication.  AR 21.  Even at the hearing, Plaintiff testified that she manages her anxiety with medication only as needed.  AR 27; *see* AR 65.  In addition, the opinion evidence supports the ALJ's finding that Plaintiff's anxiety was not a severe impairment.  *See* AR 29.  Specifically, following their consultative psychiatric examinations of Plaintiff, both Dr. Long and Dr. Murphy concluded that

there did not appear to be any psychiatric or cognitive problems which would be expected to significantly interfere with Plaintiff's ability to function on a regular basis. AR 603 (Dr. Long, Dec. 2021); 783 (Dr. Murphy, Aug. 2022).

Moreover, even to the extent that Plaintiff lists examples from the record of both her reports and diagnoses of anxiety and various other medical conditions, such as migraines and multiple systemic infectious disease syndrome, *see* Pl.'s Mem. at 21-23, 25-26,[10] Plaintiff does not cite any evidence to support the conclusion these conditions were disabling. In arriving at his decision, the question for the ALJ was not whether certain conditions existed but whether those conditions led to the conclusion that Plaintiff was still disabled. *See Harris v. Kijakazi*, No. 22-cv-1214 (KHP), 2023 WL 5013281, at *12 (S.D.N.Y. Aug. 7, 2023) ("In assessing disability, the operative question is not what illness or condition is present; it is the limitations, if any, such a condition has upon the claimant's functional abilities.") (quotation marks omitted). After thoroughly reviewing all the evidence in the record, including treatment records, Plaintiff's testimony, and medical opinions, ALJ McCormack appropriately answered that question in the negative.

Finally, Plaintiff contends that the ALJ's RFC determination is inadequate because there are certain opinions in the record that she believes warrant a finding that she is unable to perform sedentary work. Reply Mem. at 4-5. The ALJ properly explained, however, that none of the medical opinions, especially when viewed in combination with the medical treatment records

---

[10] While Plaintiff also cites reports of incontinence in the medical records, Pl.'s Mem. at 22, her hearing testimony did not mention this condition at all, nor did she report experiencing incontinence at her internal medicine consultative examinations. There is no indication that this was a condition that Plaintiff considered to be significant, let alone disabling. Indeed, when the ALJ discussed various other conditions that he found were either not severe impairments or not medically determinable impairments, he did not even address incontinence. *See* AR 23-25.

and consultative examinations, support a finding of continued disability.  *See* AR 28-31.  Among

the opinions Plaintiff cites as supporting a finding of continued disability are those of treating

providers Dr. Dena Barsoum and APRN Mary Beth Charno.  *See* Pl.'s Mem. at 23; Reply Mem.

at 4-5.[11]  But ALJ McCormack properly found these opinions to be unpersuasive because they

were neither consistent with nor supported by these providers' own treatment records and other

evidence in the record.  *See* AR 30-31.  The ALJ noted that Dr. Barsoum's opinion was

inconsistent with her own treatment records[12] showing full strength and "normal and

unremarkable" clinical fundings, as well as with other objective evidence in the record.  AR 30;

*see* AR 899-903.  He also explained that APRN Charno's opinion was inconsistent with her own

---

[11] In her reply brief, Plaintiff also cites the opinions of Dr. Puri and Dr. Murphy as
"professional opinions of Plaintiff's medical providers," Reply Mem. at 4, but these medical
providers were consultative examiners.  *See* AR 600, 778, 783.  Moreover, contrary to Plaintiff's
assertion, these opinions, which the ALJ found persuasive, *support* his RFC determination.  AR
28, 29; *see* AR 600 (Dr. Puri opining on December 8, 2021 that Plaintiff "did not have any
objective limitations to communication and fine motor/gross motor activities," and "had mild
limitations to her gait and to her activities of daily living on examination today with mild to
moderate limitations to squatting, bending, stooping, kneeling, and lifting weights"), 777-78 (Dr.
Puri opining on August 17, 2022 that Plaintiff "did not have any objective limitation to
communication or fine motor/gross motor activities," had "no objective limitations to her gait or
to her activities of daily living on examination today," and had "mild limitations to squatting,
bending, stooping, kneeling, and lifting weights"), 782-83 (Dr. Murphy opining on August 17,
2022 that Plaintiff had (1) "[n]o evidence of limitation" with respect to understanding,
remembering, and applying simple directions and instructions; understanding, remembering, and
applying complex directions and instructions; sustaining an ordinary routine and regular
attendance at work; regulating emotions, controlling behavior, and maintaining well-being;
maintaining personal hygiene and appropriate attire; and awareness of normal hazards and taking
appropriate precautions; and (2) "[m]ild limitation" with respect to using reason and judgment to
make work-related decisions; interacting adequately with supervisors, co-workers, and the
public; and sustaining concentration and performing a task at a consistent pace).

[12] As the ALJ pointed out, at the time that she provided her opinion, Dr. Barsoum had
only had three office visits with Plaintiff.  AR 30; *see* AR 899.

treatment records,[13] which showed "normal clinical findings," as well as with other objective evidence in the record, and noted that she did not cite any clinical findings or objective signs in support of her opinions.  AR 30-31; *see* AR 1102.  Plaintiff cites no evidence to refute this finding, nor does she claim that the ALJ improperly evaluated these opinions.  In any event, "an ALJ may rely on inconsistencies between opinions and treatment[ ] notations in assessing opinion evidence."  *Marc W. v. Comm'r of Soc. Sec.*, No. 20-cv-1121 (WBC), 2021 WL 2435651, at *6 (W.D.N.Y. June 15, 2021); *see also, e.g., Dorta v. Saul*, No. 19-cv-2215 (JGK) (RWL), 2020 WL 6269833, at *5 (S.D.N.Y. Oct. 26, 2020) (ALJ was entitled to discount treating physicians' opinions because they "were inconsistent with their own contemporaneous treatment notes and other evidence in the record") (citing cases).

In sum, ALJ McCormack's RFC determination is supported by substantial evidence drawn from the records of Plaintiff's medical examinations, Plaintiff's testimony and statements to her healthcare providers about her health and daily activities, and multiple opinions of medical professionals.

### B.    ALJ McCormack's Step Eight "Alternative" Finding Does Not Warrant Remand

Plaintiff also argues that her case should be remanded because (1) two of the jobs cited by the vocational expert at the hearing, "assembly inspector" and "polisher," are not available in significant numbers in the national economy, and (2) the third job cited by the vocational expert,

---

[13] The ALJ noted that APRN Charno had only examined Plaintiff twice before rendering her opinion.  AR 31.

"document preparer," has been determined to be obsolete.  *See* Pl.'s Mem. at 23-24.  Neither of these arguments warrants a remand in this case.[14]

In the eight-step sequential analysis, the ALJ is required at step seven to determine whether the claimant can perform past relevant work.  20 C.F.R. § 404.1594(f)(7).  If the claimant has the capacity to perform past relevant work, then the claimant's disability has ended, and there is no need to continue with the analysis.  *Id.*  Here, ALJ McCormack found, based on substantial evidence in the record, that Plaintiff could perform her past relevant work as an eligibility worker and a case worker.  AR 32; *see* footnote 8, *supra*.  In accordance with 20 C.F.R. § 404.1594(f)(7), having found that Plaintiff could perform her past relevant work, the ALJ's analysis should have ended there.  The ALJ nonetheless proceeded to step eight for an "alternative" finding, and discussed whether there were other jobs in the national economy that Plaintiff could perform.  AR 32.  At step eight, he determined that Plaintiff could perform the work in the three job titles with which Plaintiff takes issue.  *Id.*

Plaintiff has not argued, however, that the ALJ committed error at step seven in concluding that she could perform past relevant work.  Therefore, the alternative analysis at step eight was unnecessary, and even if there were merit to Plaintiff's contentions, there is no basis to remand the case based on the arguments that the assembly inspector and polisher jobs do not exist in sufficient numbers in the national economy or that the document preparer job is now obsolete.  *See Arthur J.S. v. Comm'r of Soc. Sec.*, No. 19-cv-0187 (DEP), 2020 WL 1024377, at *6 (N.D.N.Y. Jan. 22, 2020) ("[B]ecause I find that the step four determination is supported by substantial evidence, that ends the inquiry, and any error that occurred, and I don't find that one

---

[14] Plaintiff appears to have abandoned these arguments in her reply brief, since she makes no mention of them there.  *See generally* Reply Mem.

did occur, but if an error occurred at step five, it would be harmless error." [15]); *Bellamy v. Apfel*, 110 F. Supp. 2d 81, 92-93 (D. Conn. 2000) ("To the extent that we find substantial evidence to support the ALJ's finding at the previous step in the sequential evaluation process that plaintiff could perform her past relevant work as a telemarketer, any error at Step Five would constitute harmless error.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for remand (ECF No. 13) is DENIED.

The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

Dated:  September 2, 2025
        White Plains, New York

                                        **SO ORDERED.**

                                        ANDREW E. KRAUSE
                                        United States Magistrate Judge

---

[15] As explained in footnote 6, *supra*, steps four and five in a disability determination correspond to steps seven and eight in a medical improvement determination.